IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM MURRAY and JUNE OMURA,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANDREW WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency, the U.S. ENVIRONMENTAL PROTECTION AGENCY and R.D. JAMES, in his official capacity as the Assistant Secretary of the Army (Civil Works) and the U.S. ARMY CORPS OF ENGINEERS,<br><br>*Defendants*. | No. 1:19-cv-1498-LEK/TWD |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INSTITUTE FOR POLICY INTEGRITY TO FILE A BRIEF AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. Legal Standard ................................................................................................................... 1

II. Policy Integrity's Participation Will Be Useful to the Court ...................................... 1

A. Policy Integrity's Expertise Will Benefit the Court............................................... 2

B. Policy Integrity Has a Significant Interest in the Case, Which Makes Its Participation Especially Useful to the Court ............................................................................................... 3

C. Policy Integrity's Participation Is Desirable in Light of the Broader Ramifications of Key Issues in this Case ............................................................................................................... 4

III. This Motion is Timely ................................................................................................. 6

IV. This Motion is Unopposed........................................................................................... 7

CONCLUSION.................................................................................................................. 7

For the reasons detailed below, this Court should grant the unopposed motion of the Institute for Policy Integrity at New York University School of Law ("Policy Integrity") for leave to file the accompanying amicus curiae brief in support of Plaintiffs.[1]

## I. Legal Standard

This Court "has broad inherent authority to permit or deny an appearance as amicus curiae in a case." *James Square Nursing Home, Inc. v. Wing*, 897 F. Supp. 682, 683 n.2 (N.D.N.Y. 1995). A court will normally grant such a motion so long as it believes that that the "brief will aid in the determination of the motion[] at issue." *Id.*; *c.f.* Fed. R. App. P. 29(b)(2) (providing that prospective amicus should state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case"). This includes when "the amicus has an interest in some other case that may be affected by the decision in the present case…, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Pratt v. Indian River Cent. Sch. Dist.*, 2010 WL 11681606, at *3 (N.D.N.Y. Dec. 6, 2010) (internal quotation marks omitted). Moreover, "the court is more likely to grant leave to appear as an amicus curiae in cases involving matters of public interest." *Id.* (quoting 4 Am. Jur. 2d Amicus Curiae § 3) (alterations omitted).

## II. Policy Integrity's Participation Will Be Useful to the Court

In this case, Plaintiffs seek an order vacating the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("Rule"), promulgated by the Environmental Protection Agency and Department of the Army (collectively, "the agencies"). They argue that the Rule is arbitrary and capricious for, among other reasons, failing to consider the Rule's impacts on water quality, articulate a reasoned explanation consistent

---

[1] This motion does not purport to represent the views, if any, of New York University School of Law.

1

with the objectives of the Clean Water Act, or properly evaluate the Rule's extensive adverse impacts. *See, e.g.*, Pls. Br. 29–32 (arguing that the economic analysis prepared by the agencies inappropriately diminishes the Rule's forgone water-quality benefits).

The agencies' economic analysis for the Rule is their most focused assessment of the Rule's impacts. *See generally id*. at 10–11 (providing relevant background). Policy Integrity has particular expertise in agency economic analysis, including on the consideration and valuation of ecosystem services that are at issue in this case. By proposing to file a brief that highlights the flaws in this economic analysis, Policy Integrity's motion provides a useful perspective to aid the Court in understanding this analysis and better understand key issues in this case. In addition, this case may have ramifications beyond the particular rulemaking under review and parties directly involved, and Policy Integrity's interest and expertise in the broader issues implicated by this case can be helpful to the Court.

**A.  Policy Integrity's Expertise Will Benefit the Court**

Policy Integrity is a nonpartisan, not-for-profit think tank dedicated to improving the quality of government decisionmaking through advocacy and scholarship in the fields of administrative law, economics, and public policy, with a particular focus on environmental and economic issues. Areas of particular concern for Policy Integrity include the proper valuation of ecosystem services as well as the proper assessment of regulatory costs and benefits. Policy Integrity consists of a team of legal and economic experts, trained in the estimation of costs and benefits and in the application of economic principles to regulatory decisionmaking. Its director,

Richard L. Revesz, has published more than eighty articles and books on environmental and administrative law, including numerous works on environmental federalism.[2]

In furtherance of its mission to promote rational decisionmaking, Policy Integrity has filed amicus curiae briefs in numerous cases addressing agency failures to rationally assess the environmental and economic impacts of their rules. *See, e.g,* Briefs of Institute for Policy Integrity as Amicus Curiae, *California v. U.S. Dep't of Interior*, 381 F. Supp. 3d 1153 (N.D. Cal. 2019) (explaining how the Department of the Interior's repeal of rule designed to reform royalty procedures failed to adequately address the repeal's economic impacts); *California v. Bernhardt,* 2020 WL 4001480 (N.D. Cal. July 15, 2020) (arguing that agency's treatment of the forgone benefits in rescinding the Waste Prevention Rule was arbitrary and capricious). In those cases, courts have agreed that the agencies' analyses were arbitrary and capricious. *California*, 2019 U.S. Dist. LEXIS 66300 at *49–50; *California*, 2020 WL 4001480, at *29–39; *see also California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1123 (N.D. Cal. 2017). This same expertise and perspective will enable Policy Integrity to provide useful context and analysis in this case.

**B. Policy Integrity Has a Significant Interest in the Case, Which Makes Its Participation Especially Useful to the Court**

Policy Integrity also has a strong interest in the issues in this case. Harnessing its academic and regulatory expertise, Policy Integrity has participated in multiple agency and court proceedings regarding the agencies' recent attempts to limit regulatory jurisdiction under the Clean Water Act.

For instance, Policy Integrity submitted comments on the proposal underlying the Rule.[3] Policy Integrity's economics director, Peter Howard, Ph.D., co-authored a report with Jeffrey

---

[2] A full list of publications can be found in Prof. Revesz's online faculty profile, https://its.law.nyu.edu/facultyprofiles/index.cfm?fuseaction=profile.overview&personid=20228.

[3] *Available at* https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-6898.

3

Shrader, Ph.D., a professor at Columbia University's School of International and Public Affairs, analyzing flaws in the economic analysis accompanying that proposal, which Policy Integrity submitted to the record.[4] Policy Integrity submitted comments on the agencies' earlier proposal to repeal the Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015). Policy Integrity also submitted an amicus brief supporting a challenge to the suspension of the Clean Water Rule, arguing that the agencies failed to rationally analyze the harms of the suspension, ignoring considerable forgone benefits. *See* Brief of Institute for Policy Integrity as Amicus Curiae, *New York v. Pruitt*, No. 18-1030 (S.D.N.Y. filed May 11, 2018). Finally, in addition to this case, Policy Integrity has submitted amicus curiae briefs in support of plaintiffs challenging the Rule in three other courts. *See* Briefs for Institute for Policy Integrity as Amicus Curiae, *Colorado v. EPA*, No. 20-1238 (10th Cir. filed Aug. 11, 2020); *S.C. Coastal Conservation League v. Wheeler*, No. 20-1687 (D.S.C. filed July 17, 2020); *California v. Wheeler*, No. 20-3005, 2020 WL 3403072 (N.D. Cal. June 19, 2020).

In light of its expertise and experience with these topics, Policy Integrity is well positioned to provide a useful perspective on the issues in this case.

### C. Policy Integrity's Participation Is Desirable in Light of the Broader Ramifications of Key Issues in this Case

Policy Integrity seeks to participate in this litigation because the case has the potential to affect the outcome of other similar cases, as well as other rulemakings and policy decisions. Policy Integrity's amicus brief focuses on the agencies' failure to properly consider forgone benefits and indirect costs of repealing environmental protections. The Court's ruling on these issues may have broader implications.

---

[4] *Available at* https://www.regulations.gov/document?D=EPA-HQ-OW-2018-0149-5272.

The broad principles that govern rational regulatory decisionmaking are enshrined in the Administrative Procedure Act. Specifically, the Administrative Procedure Act requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts set aside agency action where the agency failed to consider "an important aspect of the problem." *Id.* One important aspect that agencies must address when explaining a decision is the cost that the decision imposes on society. *See Michigan v. EPA*, 576 U.S. 743, 753 (2015) (explaining that "reasonable regulation ordinarily requires paying attention to the advantages *and* the disadvantages of agency decisions"). Executive Order 12,866, which has governed regulatory decisionmaking since 1993, instructs agencies to consider both a regulation's costs and benefits from the perspective of society as a whole, with costs encompassing "any adverse effects . . . on health, safety and the natural environment." Exec. Order No. 12,866 § 6(a)(3)(C)(ii), 58 Fed. Reg. 51,735 (Sept. 30, 1993).

In the context of a regulatory rollback, costs include the forgone benefits of the prior regulatory regime. Indeed, "'cost' includes more than the expense of complying with regulations; "any disadvantage could be termed a cost," including "harms that regulation might do to human health or the environment." *Michigan*, 135 S. Ct. at 2707. And failure to provide an adequate explanation for forgoing benefits normally renders a rule arbitrary and capricious. *See, e.g.*, *Air All. Hous. v. EPA*, 906 F.3d 1049, 1067–68 (D.C. Cir. 2018) (holding that suspension was arbitrary and capricious for failing to adequately address rule's forgone benefits); *California v. Bernhardt,* No. 18-cv-05712, at *29–39 (holding that the agency's cost-benefit analysis was arbitrary and capricious); *California*, 277 F. Supp. 3d at 1122 (holding that agency's failure to consider forgone benefits was arbitrary and capricious).

5

The Rule is one of the many recent rollbacks of environmental, public-health, and consumer-rights protections issued by agencies under the Trump administration. Many of those other rules are also in litigation, and the outcome of this case has the potential to affect those other cases. As on example, in a pending challenge before the District Court for the District of Columbia to a recently finalized Department of Agriculture final rule limiting eligibility for the Supplemental Nutrition Assistance Program, plaintiffs contend that the rule is arbitrary and capricious, among other reasons, because the Department did not adequately consider the costs of the rule both on disenrollees and society more broadly. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment, *District of Columbia v. Dep't of Agriculture*, No. 20-119 (D.D.C. June 24, 2020).

In sum, Policy Integrity's brief has the goal of helping ensure that agencies comply with their obligations to both look at the benefits from the perspective of society as a whole and to accurately assess the economic and environmental impacts of deregulatory decisions. Because the resolution of Plaintiffs' motion for summary judgment could affect other pending and future litigation and regulatory proceedings, and because Policy Integrity can provide useful context to the Court about the broader implications of this case, this Court should grant Policy Integrity's motion to participate as amicus curiae.

## III. This Motion is Timely

Although this district does not have rules governing the timing of amicus filings, the Court may look for guidance to the rules of other courts. The Federal Rules of Appellate Procedure provide that an amicus brief shall be filed "no later than 7 days after the principal brief of the party being supported is filed," Fed. R. App. Proc. 29(a)(6), and this brief—filed seven days after Plaintiffs' motion for summary judgment—is timely under that standard. Some district courts are even more permissive: For example, the District Court for the District of Columbia simply requires an amicus motion to be filed "in a timely manner such that it does not unduly delay the Court's

ability to rule on any pending matter." Rules of the U.S. District Court for the District of Columbia, Local Rule 7(o)(2). This motion is also timely under that standard.

### IV. This Motion is Unopposed

Policy Integrity has conferred with the parties concerning the filing of this motion. Plaintiffs consent to this motion. Defendants do not oppose the motion. Accordingly, this motion is unopposed.

## CONCLUSION

For the forgoing reasons, Policy Integrity respectfully requests that the Court grant this motion and accept for filing the accompanying amicus curiae brief.

Dated: September 17, 2020          Respectfully submitted,

<div style="margin-left:2em">

/s/ Max Sarinsky
Max Sarinsky
Bethany A. Davis Noll (*pro hac vice* pending)
INSTITUTE FOR POLICY INTEGRITY
139 MacDougal Street, Third Floor
New York, NY 10012
(212) 992-8932
max.sarinsky@nyu.edu
*Counsel for* Amicus Curiae
*Institute for Policy Integrity*

</div>