**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| WILLIAM MURRAY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01498-LEK/TWD |
| | ) | |
| ANDREW WHEELER, in his official | ) | |
| capacity as Administrator of the U.S. | ) | |
| Environmental Protection Agency, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR CROSS-MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 2

      I.      Plaintiffs Lack Standing to Challenge the NWPR. .................................................. 3

            A.     Plaintiffs Fail to Demonstrate that the Wetland Would be Jurisdictional Under the 2015 Rule ......................................................... 5

            B.     Plaintiffs Fail to Demonstrate that Dean's Paving Will Discharge Fill Material or Polluted Stormwater as a Result of the NWPR. ................ 7

            C.     Even Hypothetical Reinstatement of the 2015 Rule Could Not Affect Historic Activities By Dean's Paving .............................................. 8

      II.     If the Court Reaches the Merits, the NWPR Is Permissible Under the CWA and Should Be Upheld. ............................................................................... 10

      III.    The Court Should Defer Ruling on a Remedy Until After Deciding the Cross-Motions for Summary Judgment. ............................................................. 14

Conclusion .................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Catskill Mountains Chapter of Trout Unlimited, Inc. v EPA,*
   846 F.3d 492 (2d Cir. 2017) *cert. denied, New York v. EPA,* 138 S. Ct. 1164 (2018) ....... 10, 11

*Chevron v. NRDC,*
   467 U.S. 837 (1984) ................................................................................................. 3

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ......................................................................................... 4, 5, 7

*County of Maui, Hawaii v. Hawaii Wildlife Fund,*
   140 S. Ct. 1462 (2020) ........................................................................................... 12

*Dark Storm Industries LLC v. Cuomo,*
   471 F. Supp. 3d 482 (N.D.N.Y. 2020) ..................................................................... 4

*Davis v. FEC,*
   554 U.S. 724 (2008) ................................................................................................. 1

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,*
   204 F.3d 149 (4th Cir. 2000) ................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
   528 U.S. 167 (2000) ........................................................................................... 4, 10

*Guertin v. United States,*
   743 F.3d 382 (2d Cir. 2014) ................................................................................... 10

*In re EPA & DOD Final Rule,*
   803 F.3d 804 (6th Cir. 2015) ................................................................................... 9

*In re EPA & DOD Final Rule,*
   713 F. App'x 489 (6th Cir. 2018) ............................................................................. 9

*In re U.S. Dep't of Def.,*
   817 F.3d 261 (6th Cir. 2016) ................................................................................. 14

*Libertarian Party of Erie County v. Cuomo,*
   970 F.3d 106 (2d Cir. 2020) ................................................................................. 4, 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 4, 5

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .................................................................................. 15

*Municipality of Anchorage v. United States*,
   980 F.2d 1320 (9th Cir. 1992) .................................................................. 14

*Nat'l Ass'n of Mfrs. v. DOD*,
   138 S. Ct. 617 (2018) ............................................................................... 9

*Solid Waste Agency of Northern Cook County v U.S. Army Corps of Engineers*,
   531 U.S. 159 (2001) .................................................................................. 10

*South Carolina Coastal Conservation League v. Pruitt*,
   318 F. Supp. 3d 959 (D.S.C. 2018) .......................................................... 9

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................. 4, 5

*Sprint Communications Co. L.P. v. APCC Services, Inc.*,
   554 U.S. 269 (2008) .................................................................................. 5

*Trump v. New York*,
   141 S. Ct. 530 (2020) ............................................................................... 4

### Statutes

33 U.S.C. § 1251(b) ........................................................................................ 14

33 U.S.C. § 1342 ............................................................................................. 8

33 U.S.C. § 1371(c)(1) .................................................................................... 14

### Code of Federal Regulations

33 C.F.R. § 328.3(a)(8) ................................................................................... 6

33 C.F.R. § 328.3(c)(1), (4) ............................................................................ 5

**Federal Register**

80 Fed. Reg. 37,054 (June 29, 2015) ...................................................................... 3, 9, 11

84 Fed. Reg. 56,626 (Oct. 22, 2019) ............................................................................ 9

85 Fed. Reg. 22,250 (Apr. 21, 2020) .................................................... 1, 11, 12, 13, 14

**INTRODUCTION**

The Navigable Waters Protection Rule ("NWPR" or "2020 Rule") represents the

Department of the Army and Environmental Protection Agency's (collectively, the "Agencies")

best interpretation of the text, structure, and purpose of the Clean Water Act ("CWA") and of

relevant Supreme Court guidance, informed by policy and science. As the Agencies repeatedly

made clear in the course of this rulemaking, "[w]hile science informs the agencies' interpretation

of the definition of 'waters of the United States,' science cannot dictate where to draw the line

between Federal and State or tribal waters, as those are legal distinctions that have been

established within the overall framework and construct of the CWA." 85 Fed. Reg. 22,250,

22,271 (Apr. 21, 2020). Although Plaintiffs argue that the Agencies insufficiently analyzed the

NWPR's effect on water quality, Plaintiffs ignore the entirely reasonable analysis of these issues

in the administrative record, including the undisputed limitations of available data. For that

reason, and those listed below, Plaintiffs' substantive challenge to the NWPR fails.

Yet there is no need to reach Plaintiffs' substantive arguments because they do not have

the standing required to bring this suit. It is well-settled that "standing is not dispensed in gross"

and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of

relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks and

citations omitted). In this case, all of the claims in the Amended Complaint are sweeping facial

challenges to the Agencies' 2019 Rule (which repealed an earlier 2015 Rule) and the 2020

NWPR (which superseded the 2019 Rule). In general, Plaintiffs allege that they believe the 2019

and 2020 Rules inappropriately reduce environmental protection relative to the 2015 Rule.

Plaintiffs therefore seek vacatur of the 2019 and 2020 Rules and reinstatement of the 2015 Rule.

But there is a glaring and obvious mismatch between Plaintiffs' sweeping claims for relief

regarding these nationally applicable rules and the far more parochial and speculative concerns that underlie their claim of standing.

More specifically, all of Plaintiffs' allegations of injury stem from the filling of a wetland by their neighbor Dean's Paving. Dean's Paving allegedly filled the wetland in question, which also crosses onto Plaintiffs' property, beginning in 2007. While the Agencies do not contest the sincerity of Plaintiffs' concerns about their neighbor's actions, for multiple reasons these concerns do not and cannot provide standing to bring the broad facial challenges articulated in the Amended Complaint. To begin with, Plaintiffs have failed to demonstrate that the regulatory status of the wetland in question would have been different in material respects under the NWPR relative to the 2015 Rule. And even more importantly, all of the injuries Plaintiffs allege relate to fill activities that Dean's Paving conducted years ago, most of them pre-dating even the 2015 Rule. No relief this Court could grant in this case could retroactively un-do these historic events. And while the 2020 Rule obviously governs current and future regulation of the shared wetland, Plaintiffs have not identified any specific current or planned activity affecting that wetland by Dean's Paving. Instead, Plaintiffs' alleged standing rests on nothing more than sheer speculation that Dean's Paving might one day conduct additional work affecting the wetland, and that this hypothetical additional work would be regulated differently under the definition of "waters of the United States" under the 2019 and 2020 Rules than it would have been under the 2015 Rule's definition of the term. Such allegations are wholly insufficient to support Plaintiffs' standing to maintain this action.

## ARGUMENT

The Court should grant Defendants' cross-motion for summary judgment and deny Plaintiffs' motion. First, this Court does not have jurisdiction to hear Plaintiffs' challenge to the

NWPR because Plaintiffs lack standing. Even if the Court determines it has jurisdiction, the NWPR reflects a reasonable interpretation of the CWA's ambiguous term, "waters of the United States," and thus should be upheld under *Chevron v. NRDC*, 467 U.S. 837 (1984). Additionally, the NWPR is neither arbitrary nor capricious under the Administrative Procedure Act ("APA"), as the Agencies' decision was reasonably explained. Lastly, although the Agencies believe that no relief should be afforded to Plaintiffs, if the Court holds that Plaintiffs have standing, and finds deficiencies in the NWPR, it should request separate briefing from the parties on what remedy would be appropriate based upon the specific problems found by the Court.

## I.      Plaintiffs Lack Standing to Challenge the NWPR.

As the Agencies previously demonstrated, Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment ("Defs. Agencies' Brief"), Dkt. No. 35-1, at 10-18, Plaintiffs have not met their burden of establishing that they have standing to bring this action. Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment ("Pls. Reply Brief."), Dkt. No. 38, does not address the two primary points raised by the Agencies with regard to standing: (a) that Plaintiffs have not shown that a "wetland" (which they denominate as "PEM1E") that crosses their property (the "Wetland") would be jurisdictional under the 2015 Rule, 80 Fed. Reg. 37,054 (June 29, 2015), and (b) that they have not demonstrated that the CWA's regulation (or not) of any discharge of fill material or stormwater by Plaintiffs' neighbor, Dean's Paving, would be changed by the NWPR, also known as the 2020 Rule. In brief, Plaintiffs claim, but have not demonstrated, that the Wetland would be subject to federal Clean Water Act jurisdiction under the 2015 Rule, but not under the NWPR.

A party invoking the jurisdiction of the federal courts has the burden of establishing

constitutional standing. *Trump v. New York*, 141 S. Ct. 530, 538 (2020); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).[1] The plaintiff must show

> (1) [I]t has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be addressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). If any of the three standing prongs are missing, the case must be dismissed. *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020).

At the summary judgment stage, a plaintiff cannot "rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts [establishing standing] . . . ." *Dark Storm Industries LLC v. Cuomo*, 471 F. Supp. 3d 482, 492 (N.D.N.Y. 2020) (internal quotation marks and citation omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citation omitted). Here, however, Plaintiffs' affidavit fails to assert that the Wetland that crosses their property would be jurisdictional under the 2015 Rule, but rather acknowledges that it is not clear whether CWA jurisdiction would exist under the 2015 Rule. Murray Affidavit at ¶ 7 (Dkt. No. 38-1).

The element of "injury in fact" is the "first and foremost" of the three elements of standing. *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal quotation marks and citation omitted). In order to establish injury in fact, a plaintiff must show that the injury is "concrete" *and*

---

[1] Plaintiffs criticize the Agencies for citing to Supreme Court cases such as *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), for setting forth the applicable standard for determining whether Plaintiffs meet the requirements for Article III standing. *See* Pls. Reply Br. at 10 (asserting that the Agencies should have cited cases "involving challenges to EPA's compliance with the APA in conducting rulemaking interpreting the CWA"). But, the Constitutional requirements set forth in the cases cited by the Agencies are equally applicable in APA and CWA cases, as there is no exception to the Article III standing requirement under either the APA or CWA, nor could there be.

"particularized," and that the injury is "actual or imminent, not conjectural or hypothetical." *Id*. at 1548. To be "concrete," the injury must be "de facto," that is, that it actually exists, that it is real and not abstract. *Id*. at 1549. To be "particularized," the injury must affect the plaintiff in a "personal and individual way." *Id*. at 1548; *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000).

As to the requirement that the alleged injury be actual or imminent, a risk of real harm may be sufficient, but the threatened injury must be "*certainly impending*" to constitute injury in fact, and "allegations of *possible* future injury" are not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation and quotation marks omitted; emphasis in original).

The element of redressability requires that the plaintiff show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citation omitted); *Sprint Communications Co. L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273-74 (2008).

### A.   Plaintiffs Fail to Demonstrate that the Wetland Would be Jurisdictional Under the 2015 Rule.

As the Agencies previously explained, Plaintiffs have not adequately shown that the Wetland would be jurisdictional under the 2015 Rule. Defs. Agencies' Brief at 11-13. To begin, Plaintiffs have not demonstrated that the Wetland meets the definition of "wetland" under the 2015 Rule, a precondition for finding that the wetland has a significant nexus to jurisdictional waters. *See* 33 C.F.R. § 328.3(c)(1), (4). Plaintiffs originally alleged that the Wetland was designated as such on the U.S. Fish and Wildlife Service's ("FWS") National Wetlands Inventory ("NWI"). But the FWS's NWI Data Limitations, Exclusions and Precautions Website, https://www.fws.gov/wetlands/Data/Limitations.html, and other government publications caution that federal, state, and local agencies may define and describe wetlands in a manner that varies

from the NWI; that wetlands may have changed or been filled since the NWI maps were created; and that NWI maps are based primarily on aerial photography, which has an inherent margin of error. Defs. Agencies' Brief at 11-12. Indeed, the NWI uses a different definition of "wetlands" than the Agencies' regulatory definition of "wetlands." In addition, FWS has stated that the NWI does not attempt to define jurisdictional limits. *Id*. at 12.

The Agencies also showed that Plaintiffs provided no more than conclusory allegations that the Wetland would have a significant nexus to the Wallkill River, a requirement for non-tidal, non-adjacent waters, such as the Wetland at issue, to be jurisdictional under the 2015 Rule. 33 C.F.R. § 328.3(a)(8). Defs. Agencies' Brief at 12-13. An affidavit executed by Mr. Murray was attached to Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Doc. 38-1, but does not include any further substantiation of whether the Wetland would be jurisdictional under the 2015 Rule.

Indeed, Mr. Murray's affidavit states that Plaintiffs are not even sure whether the wetland on their property would be jurisdictional under the 2015 Rule. Mr. Murray states:

> I understand the parties are engaged in discussion as to whether PEM1E is considered a federal wetland under various definitions. Regardless of how the wetlands are defined, I am concerned with Dean's Paving past and potential future filling of PEM1E with petroleum products which create an ongoing threat to my health and safety from petroleum products leaching into my property and well supply, especially since the fill is acting as a dam causing water to back up onto my property.

Murray Affidavit at ¶ 7. But Mr. Murray's vague statement that there is a "discussion as to whether [the Wetland] is considered a federal wetland" provides no basis to conclude that the wetland in question would have been regulated under the 2015 Rule, and without that link in the chain, there is also no basis to conclude that the 2019 or 2020 Rules caused any material change in the regulatory status of the Wetland.

6

As a result, Plaintiffs have not shown that they suffered an "injury in fact," since if the Wetland was *not* jurisdictional under the 2015 Rule, they were *a fortiori* not injured when the 2015 Rule was withdrawn. Plaintiffs have not met their burden of establishing an injury in fact, and therefore the case must be dismissed for lack of subject matter jurisdiction. *Libertarian Party of Erie County*, 970 F.3d at 121.

### B.   Plaintiffs Fail to Demonstrate that Dean's Paving Will Discharge Fill Material or Polluted Stormwater as a Result of the NWPR.

The Agencies showed that Plaintiffs have not presented any evidence that Dean's Paving intends to further fill the Wetland. Defs. Agencies' Br. at 13-16. In response, Plaintiffs have not come forth with evidence that Dean's Paving intends to discharge fill material into the balance of the Wetland existing on its property. In other words, Plaintiffs effectively concede that future filling of the Wetland by Dean's Paving is pure speculation. But, the injury in fact must be "*certainly* impending," and "allegations of *possible* future injury" are not enough. *Clapper*, 568 U.S. at 409. As a result, they have not shown injury in fact.

In addition, even if Plaintiffs had presented sufficient evidence that Dean's Paving would further discharge fill material into the Wetland, Plaintiffs have not shown that the relief Plaintiffs are requesting would prevent any future filling of the Wetland by Dean's Paving. Assuming that the 2015 Rule went back into effect, the 2015 Rule would not necessarily prohibit Dean's Paving from engaging in further fill activities. For instance, Dean's Paving could possibly obtain permission to fill any remaining portion of the Wetland on its property through a CWA Section 404 permit issued by the Corps of Engineers *even if* the Wetland was jurisdictional. Defs. Agencies' Brief at 14-16. Plaintiffs do not address this argument in their Memorandum in Opposition.

Plaintiffs have previously asserted that "[w]ith the NWPR's removal of federal protection

for [the Wetland], there is no federal prohibition on Dean's Paving . . . allowing untreated stormwater into the [W]etland," and that "[u]ntreated stormwater runoff containing petroleum products will enter [the Wetland] and gravitate onto plaintiffs' neighboring property." Bacon Affirmation at ¶¶ 12-13 (Dkt. No. 17-1). Mr. Murray's declaration, attached to the Memorandum in Opposition, discusses a claim that the fill created by Dean's Paving has caused flooding on his property. Murray Affidavit at ¶¶ 4-5.

As indicated in our brief, the State of New York has assumed responsibility for implementing the CWA's "National Pollutant Discharge Elimination System," 33 U.S.C. § 1342, which addresses certain stormwater discharges, among other things. Defs. Agencies' Brief at 16. In addition, the Agencies provided a comprehensive discussion of New York's statute and regulations regarding control of stormwater discharges and concluded that, based on the facts alleged by Plaintiffs, New York would not require Dean's Paving to limit stormwater discharges, even if the Wetland was jurisdictional under the CWA. *Id.* at 16-18. Plaintiffs did not address those contentions in their Memorandum in Opposition. In other words, whether or not the Wetland would have been jurisdictional under the 2015 Rule would not necessarily affect whether any stormwater discharges from the Dean's Paving property would continue to occur. Thus, Plaintiffs have not alleged any injury in fact relating to stormwater discharges.

C.     **Even Hypothetical Reinstatement of the 2015 Rule Could Not Affect Historic Activities By Dean's Paving.**

As Mr. Murray makes clear in his affidavit, Dean's Paving began filling the Wetland "about 14 years ago." Murray Affidavit at ¶ 4. "Plaintiffs maintain that if they are ultimately successful in this litigation [this Court will order] reinstatement of the 2015 Clean Water Rule in New York, [and] Plaintiffs may proceed to petition the Army Corps of Engineers for an order removing the fill placed in PEM1E." Pls. Reply Brief at 15. If the Corps declines to take action,

"then Plaintiffs may seek judicial intervention under the CWA's citizen suit provisions." *Id*. As discussed previously, Plaintiffs fail to demonstrate that the Wetland would be jurisdictional under the 2015 Rule. But, Plaintiffs further fail to allege that their injury could be redressed by reinstatement of the 2015 Rule because CWA regulations are not retroactive.

Plaintiffs allege that Dean's Paving began filling the Wetland about 14 years ago, i.e., in 2007. Needless to say, the 2015 Rule was *not* in effect then. In New York it became effective on August 28, 2015, 80 Fed. Reg. at 37,054, though only for about six weeks. The 2015 Rule was enjoined nationwide on October 9, 2015, by the Sixth Circuit Court of Appeals. *In re EPA & DOD Final Rule*, 803 F.3d 804, 805 (6th Cir. 2015). After the Supreme Court ruled that the Sixth Circuit did not have jurisdiction to hear challenges to the 2015 Rule, and a rule extending the 2015 Rule's applicability date was enjoined, the 2015 Rule went back into effect in New York on August 16, 2018. *See Nat'l Ass'n of Mfrs. v. DOD*, 138 S. Ct. 617, 620 (2018); *In re EPA & DOD Final Rule*, 713 F. App'x 489 (6th Cir. 2018) (lifting stay of the 2015 Rule); *South Carolina Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 966, 969 (D.S.C. 2018) (enjoining rule that extended the 2015 Rule's applicability date). The 2015 Rule stayed in effect in New York until it was repealed, effective on December 23, 2019. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019). Thus the 2015 Rule was only in effect for less than two months in 2015, a little over four months in 2018, and most of 2019.

To the extent that Dean's Paving filled in the Wetland between 2007 and August 28, 2015, or between October 9, 2015, and August 16, 2018 (when the rule was enjoined by the Sixth Circuit and/or not in effect due to the Agencies' rule extending the 2015 Rule's applicability date), Plaintiffs do not allege that those actions violated the CWA regulations in place during those time periods. Accordingly, even if this Court were to reinstate the 2015 Rule

going forward, Plaintiffs' injuries flowing from Dean's Paving's historic activities would *not* necessarily be redressed. Therefore, it is not "likely, as opposed to merely speculative, that the injury will be addressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180-81.

Plaintiffs' legal argument regarding standing presented in their Memorandum in Opposition is based on the premise that the Wetland would be jurisdictional under the 2015 Rule, but not under the NWPR. As the Agencies have shown, Plaintiffs have not adequately proven the facts underlying that premise, and have therefore failed to meet their burden to prove constitutional standing.

## II.     If the Court Reaches the Merits, the NWPR Is Permissible Under the CWA and Should Be Upheld.

Plaintiffs argue that the Agencies' adoption of the NWPR was arbitrary, capricious, and an abuse of discretion, because the Agencies did not reach a conclusion as to exactly how the nation's water quality would be affected by the NWPR. But, such arguments must fail under the deference afforded to the Agencies and the record before the Agencies during the rulemaking.

First, as the Agencies previously explained, Defs. Agencies' Brief at 32, *Guertin v. United States*, 743 F.3d 382 (2d Cir. 2014), is not relevant to this rule, where the Agencies fully explained their rationale for including certain waters within the NWPR's definition of "waters of the United States" and excluding others. Despite their protests, Pls. Reply Brief at 19, it is difficult to read Plaintiffs' briefs as not standing for the untenable proposition that the CWA "require[s] that water quality be improved whatever the cost or means." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 501 (2d Cir. 2017), *cert. denied, New York v. EPA*, 138 S. Ct. 1164 (2018). Moreover, that Plaintiffs suggest that the Agencies should have re-affirmed the 2015 Rule by relying on the *dissent* in *Solid Waste Agency of Northern Cook County v U.S. Army Corps of Engineers*, 531 U.S. 159 (2001), Pls. Reply Br. at 19, rather

10

than looking at the plurality in *Rapanos* or the district court cases holding the 2015 Rule unlawful, well demonstrates that Plaintiffs are arguing that the Agencies were required to take the very sort of maximalist approach to water quality that the CWA does not always require, as the Second Circuit in *Catskill Mountains* recognized.

Second, Plaintiffs ignore key points when comparing the Agencies' action regarding the 2015 Rule to the NWPR. Plaintiffs argue that "if the Agencies had in fact considered science, they would not have repealed the 2015 Rule which was based on years of peer-reviewed scientific analysis." Pls. Reply Br. at 18. The Agencies have long stated that science alone cannot dictate the CWA's line between federal and state waters. The 2015 Rule "interpretation [wa]s based not only on legal precedent and the best available peer-reviewed science, but also on the agencies' technical expertise and extensive experience in implementing the CWA over the past four decades." 80 Fed. Reg. at 37,055. EPA's Science Advisory Board similarly stressed in 2015: "'significant nexus' is a legal term, not a scientific one." *Id.* at 37,065. So as both the 2015 Rule and the NWPR recognized, "science does not provide a precise point along the continuum at which waters provide only speculative or insubstantial functions to downstream waters." *Id.* at 37,090.

Further, the Agencies did not conclude that any particular waters are ecologically unimportant or unworthy of protection. To the contrary, Plaintiffs confuse the scope of CWA *jurisdiction* over discharges with the scope of CWA *protection*. To this end, the Agencies considered that the CWA's longstanding NPDES permitting program will continue to address some point source discharges of pollutants into non-jurisdictional waters that flow into waters of the United States. *See* 85 Fed. Reg. at 22,319 (stating that a "CWA section 402 permittee currently discharging to a jurisdictional water that becomes non-jurisdictional under this final

rule would likely remain subject to the requirements of the Act"). The Agencies explained this "longstanding approach," which holds that discharges to a water that "is non-jurisdictional but conveys pollutants to downstream jurisdictional waters" may still be regulated because that water "may be a point source that subjects a discharger . . . to section 402 permitting requirements." 85 Fed. Reg. at 22,297; *see also County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1476 (2020) (the CWA "requires a permit when there is a direct discharge from a point source into navigable waters or when there is the *functional equivalent of a direct discharge*.").

Moreover, the Agencies considered relevant scientific principles to inform aspects of the NWPR. The Agencies explained why the Connectivity Report and other science did not preclude—but actually supported—aspects of the NWPR. *E.g.*, 85 Fed. Reg. at 22,288-95. The preamble summarized why the Agencies can recognize a "gradient of connectivity." *Id.* at 22,288 (quoting SAB Commentary). The Agencies relied on scientific principles, including hydrologic connectivity, to develop the flow classifications (i.e., perennial, intermittent, ephemeral) used in the NWPR, the incorporation of inundation by flooding as a surface water connection establishing jurisdiction for certain waters and wetlands, and the use of the "typical year" concept that relies upon a large body of precipitation and other climatic data to inform what may be in a normal range for a particular geographic region. *Id.* The NWPR's treatment of these issues is well-supported by the administrative record. In sum, Plaintiffs' argument that the Agencies did not consider science in promulgating the NWPR is refuted by the record here.

Third, Plaintiffs misrepresent the Agencies' longstanding view of the National Wetlands Inventory and the National Hydrography Dataset. Plaintiffs assert that "Defendants now attack the Agencies' [NWI] mapping as deficient, [but] it was EPA itself that relied upon these maps to report that 51% of wetlands and 18% of streams nationwide, (300 miles of ephemeral streams),

would no longer be jurisdictional under the 2020 Rule." Pls. Reply Br. at 17 (citing EPA-HQ-OW-2018-0149-11767). This is not the case. The document cited by Plaintiffs specifically states, "NWI does not depict jurisdictional status of wetlands." EPA-HQ-OW-2018-0149-11767 at 11. Similarly, the document states "NHD does not depict jurisdictional status of streams." *Id*. at 6. The Agencies ultimately concluded that the limitations of the NHD and NWI databases precluded their use to quantify the potential extent of waters whose CWA jurisdictional status could change under the NWPR. 85 Fed. Reg. at 22,329. *See also* EPA-HQ-OW-2018-0149-11585.

The Agencies did, however, consider the NWPR's potential impact on water quality. For instance, the Agencies specifically noted that "[o]verall, the potential effects of a change in CWA jurisdiction on drinking water quality will depend on whether activities affecting non-jurisdictional waters also affect the quality of the water at a drinking water utility's water intake, and the capabilities of individual drinking water utilities to respond to a potential change in source water quality." 85 Fed. Reg. at 22,334. While Plaintiffs presumably wish that the Agencies had reached some sort of concise, quantitative determination regarding how water quality would be affected, the record before the Agencies did not support such a conclusion, nor does the CWA require that the Agencies make such a conclusion before revising their definition of "waters of the United States."

Fourth, Plaintiffs denigrate the Agencies' effort to define "federal jurisdiction based upon the current Administration's interpretation of the law and in the name of States' rights within the purview of the Agencies' authority." Pls. Reply Br. at 18. Of course, it was not only appropriate, but necessary, for the Agencies to define "waters of the United States" within their best legal understanding of the CWA. And, in understanding what the law required, the Agencies took into

account that the 2015 Rule—which Plaintiffs extol—was preliminarily enjoined by courts throughout the country for, amongst other things, likely exceeding the Agencies' statutory authority under the CWA, as the Southern District of Georgia determined on summary judgment. *See* 85 Fed. Reg. at 22,259. Similarly, it was entirely appropriate and consistent with the statute for the Agencies to consider states' rights in interpreting the CWA. *See* 33 U.S.C. § 1251(b) ("It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution . . . of land and water resources.").

Lastly, there is no merit to any argument from Plaintiffs that the Agencies were required to comply with the National Environmental Policy Act ("NEPA") in conducting this rulemaking. *See* Pls. Reply Brief at 7 ("[T]he Agencies' rulemaking must be the functional equivalent of a detailed environmental impact review conducted pursuant to the [NEPA]."). But the CWA clearly exempts actions of the EPA Administrator from NEPA obligations: "no action of the [EPA] Administrator taken pursuant to [the CWA] shall be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of [NEPA]." [2] 33 U.S.C. § 1371(c)(1). As a result, whatever NEPA-based arguments Plaintiffs attempt to make are simply not applicable to this CWA rulemaking.

## III.    The Court Should Defer Ruling on a Remedy Until After Deciding the Cross-Motions for Summary Judgment.

As the Agencies explained previously, Defs. Agencies' Brief at 38-39, if the Court

---

[2] The Agencies note that that even though this rulemaking was undertaken jointly with the Department of the Army, it is still subject to this exemption. *See, e.g., In re U.S. Dep't of Def.*, 817 F.3d 261, 273 (6th Cir. 2016) ("That the [2015 Rule] was promulgated jointly by the EPA Administrator and the Secretary of the Army does not defeat the fact that it represents action, in substantial part, of the Administrator."); *see also Municipality of Anchorage v. United States*, 980 F.2d 1320, 1328–29 (9th Cir. 1992) (holding that an action "does not cease to be 'action of the Administrator' merely because it was adopted and negotiated in conjunction with the Secretary of the Army and the Corps").

perceives an APA violation, rather than set aside the entire NWPR, the Court must impose "a less drastic remedy (such as partial . . . vacatur . . . ) [if] sufficient to redress respondents' injury." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Plaintiffs' reply brief, however, does not directly address any of the cases or arguments the Agencies made. Instead, Plaintiffs simply reassert that the Court should vacate and set aside the NWPR. *See* Pls. Reply Br. at 19-20. Accordingly, the tailoring of remedy should occur pursuant to separate briefing, specific to any issues identified, and based on the facts and circumstances at that time.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied, and Defendants' cross-motion for summary judgment should be granted.

Respectfully submitted,

*Of Counsel:*

DAVID FOTOUHI
*Acting General Counsel*
*Environmental Protection Agency*

CRAIG R. SCHMAUDER
*Deputy General Counsel*
*Department of the Army*

DAVID R. COOPER
*Chief Counsel*
*U.S. Army Corps of Engineers*

DATED: JANUARY 13, 2021

JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*

 s/Phillip R. Dupré _____
PHILLIP R. DUPRÉ
DANIEL PINKSTON
*Attorneys, Environmental Def. Section*
*Environment and Natural Res. Div.*
*U.S. Department of Justice*
*P.O. Box 7411*
*Washington, D.C. 20044*
*(202) 616-7501*
*phillip.r.dupre@usdoj.gov*

# CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2021, the foregoing document was served on counsel of record via the Court's electronic case filing system.

 s/ Phillip R. Dupré _____
PHILLIP R. DUPRÉ

16